

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
03/06/2015

| | | |
|---|---|---|
| IN RE: § | | |
| HUMBERTO SAENZ JR; fdba PIZZA § | CASE NO: 13-70423 | |
| PATRON INC; fdba ESTRELLA § | | |
| VENTURES, INC. DBA PIZZA PATRON; § | | |
| aka SAENZ; fdba ARMAR ENTERPRISES § | | |
| INC, *et al* § | | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| JOSE MARIA GOMEZ, *et al* § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 15-07006 | |
| § | | |
| LONE STAR NATIONAL BANK § | | |
|     Defendant(s) § | | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

    Defendant Lone Star National Bank (Lone Star) has filed a motion for summary judgment against Jose Gomez and JMG JMG Ventures LLC d/b/a Pizza Patron (Plaintiffs) under Federal Rule of Bankruptcy Procedure 7056. On January 26, 2015 the Court held a hearing on the summary judgment motion. At the hearing, the Court indicated that it would recommend that the District Court grant summary judgment. In furtherance of allowing the orderly disposition of the balance of this adversary proceeding, the claims against Lone Star were severed. As set forth below, this Court lacks authority to enter a final order dismissing Plaintiffs' claims against Lone Star. Accordingly, the Court recommends that the District Court grant Lone Star's motion for summary judgment.

## Bankruptcy Court Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court, however, may exercise authority over essential bankruptcy matters under the "public rights exception." *Id*. Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n. 11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Many bankruptcy proceedings likely fall outside the public rights exception. The Supreme Court has held, for example, that a fraudulent conveyance suit against a party that has not filed a claim against the estate falls outside of any public rights exception. *Granfinanciera*, 492 U.S. at 55-56. The public rights exception is likely even more limited when claims are asserted under non-bankruptcy law. After *Stern*, the Court's authority over state-law matters is particularly questionable.

Plaintiffs' claims against Lone Star are for common-law fraud and negligence.[1] (Case No. 13-07024; ECF No. 1-1). Granting Lone Star's motion for summary judgment would be a final order. Because Lone Star has been severed from the other defendants, a dismissal of the claims against Lone Star would end this litigation. An order is final and appealable when it ends the litigation and leaves nothing for the court to do but execute the judgment. *United States v. Garner*, 749 F.2d 281, 285 (5th Cir. 1985). This Court does not have authority to enter a final order over Plaintiffs' state-law claims against a non-debtor defendant.

Nevertheless, the Bankruptcy Court has subject matter jurisdiction over this adversary proceeding. District courts have jurisdiction over "all civil proceedings . . . related to cases under title 11. 28 U.S.C. § 1334(b). A district court may then refer a proceeding to a bankruptcy court under 28 U.S.C. § 157. A proceeding is "related to" a case under title 11 if the outcome of the proceeding "could conceivable have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). A conceivable effect is defined as "any that *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate." *(Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (emphasis in original). Subject matter jurisdiction is determined at the time that the complaint is filed. *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994).

At the time the original complaint was filed, Lone Star was a co-defendant with Debtor Humberto Saenz, Jr. Plaintiffs claim they were defrauded through the joint conduct of Saenz, the

---

[1] Plaintiffs have filed a Second Amended Complaint in a separate adversary proceeding, Docket No. 13-07029. The Second Amended Complaint is an amended version of the original complaint which forms the basis of this adversary proceeding. According to the Consolidation Order, ECF No. 58, the two adversary proceedings were to maintain separate dockets. Because both versions of the complaint only bring fraud and negligence claims against Lone Star, the *Stern* analysis is the same.

debtor, and Lone Star, the non-debtor. "When the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *In re Wood*, 825 F.2d at 94. Success against any of the defendants would have a potential effect on the estate. For example, if Lone Star and Saenz were both found liable, then Saenz may have been entitled to seek contribution from Lone Star. Because the claims against Lone Star have a conceivable effect on the bankruptcy estate, the Court possesses "related to" jurisdiction over this adversary.

## Proposed Findings of Fact

*Factual Background*

Humberto Saenz, Jr. operated a Pizza Patron restaurant in Rio Grande City. Pizza Patron Inc. (PPI) is the franchisor of Pizza Patron franchises. At various times between 2005 and 2012, Saenz operated up to six Pizza Patron franchises in South Texas. At some point in the spring of 2009, Gomez and Saenz began negotiating for the purchase of the Rio Grande franchise. (Case No. 13-07024; ECF No. 1-1; ECF No. 54 at 3). Gomez alleges that during these negotiations Saenz falsely represented that he was the franchise representative of PPI for the South Texas region. (Case No. 13-07024; ECF No. 1-1 at 3). The parties reached a preliminary agreement for Gomez to purchase the franchise location for $350,000.00.

As a result of this agreement, Saenz provided Gomez various documents reflecting the financial status of the restaurant. Gomez alleges that International Bank of Commerce helped Saenz create a 2009 Income Statement dated January through September 30, 2009. According to the statement, the Rio Grande franchise generated $107,505.16 in net income for that time period. (Case No. 13-07024; ECF No. 60 at 54). On or about October 15, 2009, Gomez signed a Purchase-Sale Agreement for the Pizza Patron franchise in Rio Grande City as well as its

equipment and inventory. Saenz allegedly failed to transfer the franchise with PPI over to Gomez.

To finance the transaction, Gomez applied for a loan from Lone Star on August 19, 2009. (Case No. 13-07024; ECF No. 54-7). Gomez and Lone Star also applied for a 7(a) loan guarantee from the Small Business Administration. In connection with this loan, Saenz provided to Lone Star a list of the restaurant's inventory, fixtures, and equipment. (Case No. 13-07024; ECF No. 1-1 at 7). Plaintiffs allege that Lone Star instructed Saenz to provide the newly purchased value of the equipment and fixtures, not the fair market value of the items. *Id.* On or about February 8, 2010, Lone Star granted Gomez a loan of approximately $287,200.00, 75% of which was ultimately guaranteed by the SBA. Lone Star alleges that Gomez personally guaranteed the loan.

On March 8, 2011, Gomez realized he could not afford to keep the restaurant open and closed its doors. (Case No. 13-07024; ECF No. 1-1 at 4). Two days later, employees of Pizza Patron Corporate office inspected the franchise. Gomez alleges that Saenz instructed Gomez that he could not be present for the inspection and that Saenz would attend in his stead. *Id.* On March 10, 2011 Saenz allegedly removed equipment and inventory from the restaurant without permission. On March 11, 2011, Saenz allegedly installed new equipment in the restaurant and reopened the restaurant. By April 11, 2011, Saenz held himself out as the new owner of the Rio Grande City Pizza Patron. Gomez claims that Saenz never repurchased the franchise from Gomez.

*Procedural Posture*

On or about September 11, 2011, Plaintiffs filed suit against Saenz, Estrella Ventures, Inc., and Lone Star National Bank in the 381st District Court, Starr County, Texas. Although

Lone Star was a named defendant in the lawsuit, they were not properly served with process and remained unaware of the suit. (Case No. 13-07024; ECF No. 56 at 3). During the pendency of the Starr County suit, Lone Star filed suit against Plaintiffs in the Hidalgo County Court at Law seeking to enforce Gomez's personal guarantee of the $287,200.00 loan. The Hidalgo County lawsuit remains active. On December 4, 2012, Plaintiffs filed a First Amended Original Petition in the Starr County Lawsuit naming IBC and PPI as additional defendants. Plaintiffs served the First Amended Original Petition on Lone Star on January 22, 2013. (Case No. 13-07024; ECF No. 56 at 4).

Saenz filed for chapter 7 bankruptcy on August 27, 2013. (Case No. 13-70423; ECF No. 1). Plaintiffs' lawsuit was subsequently removed to bankruptcy court on November 19, 2013. (Case No. 13-07024; ECF No. 1). On December 15, 2014, Lone Star filed its motion for summary judgment. The motion alleges that Plaintiffs have not presented sufficient evidence to raise a genuine issue of material fact on their claims and seeks summary judgment on all claims against Lone Star.

## Proposed Conclusions of Law

*Summary Judgment Standard*

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the

outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2] Fed. R. Civ. P. 56(c)(1). A court is not required to scour the record for factual issues that might support a litigant's position; it is the litigant's obligation to direct the court's attention to the relevant evidence. *Perez v. Johnson*, 122 F.3d 1067, 1067 (5th Cir. 1997). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir.2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara,* 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon,* 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301 (5th Cir.2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S,* 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex,* 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.,* 431 F.3d 191, 197 (5th Cir.2005). To defeat a summary judgment motion, Plaintiffs must make a showing sufficient to establish the putative existence of every element that is essential to their case. *Celotex*, 477 U.S. at 322. In other words, they must present a prima facie case. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994). Plaintiffs must produce sufficient evidence to allow a fair-minded jury to return a verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Otherwise, "there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

*Analysis*

   I. *Plaintiffs Have Failed to Present a Prima Facie Case for Negligence*

Under Texas law, a successful negligence claim requires a showing of a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). A plaintiff must establish both the existence of a duty owed to the plaintiff and a violation of that duty. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990). In determining whether the defendant was under a duty to the plaintiff, a court considers several factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the cost of guarding against the injury, and the consequences of placing the burden on the defendant. *Otis Eng'g Corp. v. Clark*, 688 S.W.2d 307, 312 (Tex. 1983). To impose a duty in tort upon parties to a contract, the court must first find that a special relationship exists between them. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App. 1996); *Carrington v. Bank of Am., N.A.*, 2013 WL 265946 at *7 (S.D. Tex. Jan. 17, 2013). "[T]he relationship between a bank and its customers does not usually create a special or fiduciary relationship." *Farah*, 927 S.W.2d at 675. When a special relationship between a bank and its customer does exist, it arises from extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities. *Id.* (citing *Greater S.W. Office Park, Ltd. v. Tex. Commerce Nat'l Bank*, 786 S.W.2d 386, 391 (Tex. App. 1990).

There is no dispute that Plaintiffs obtained a loan in the amount of $287,200.00 from Lone Star. (Case No. 13-07024; ECF No. 56-3). Plaintiffs signed numerous loan documents in connection with the loan, including the note, loan agreement, commercial loan agreement, and security agreement. (Case No. 13-07024; ECF No. 56 Exs. 1-4). The parties have a contractual relationship, or more specifically that of a bank and its customer. Texas law is clear that under ordinary circumstances, Lone Star would owe no duty of care to Plaintiffs because no special relationship existed between the parties. Plaintiffs have alleged no facts probative to the creation of a special relationship, such as Lone Star exercising a great deal of control over Plaintiffs' business activities. Instead, Plaintiffs argue that the existence of a special relationship is irrelevant to a common law negligence claim. Plaintiffs cite a Texas Supreme Court case, *El Chico Corp. v. Poole*, for the proposition that general common law imposes a duty for everyone to exercise reasonable care to avoid foreseeable injury to others. 732 S.W.2d 306, 311 (Tex. 1987).

Although Plaintiffs are correct that there is a general duty to avoid injury to others, "[t]ort obligations are in general obligations that are imposed by the law—*apart from and independent of* promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (emphasis added) (citing W. Keeton *et al.*, *Prosser and Keeton on the law of Torts* § 92 (5th ed. 1984). Parties to a contract may only sue each other on negligence theories if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties.[3] *DeLanney*, 809 S.W.2d at 494. In this case, Plaintiffs tort claims arise entirely from the loan

---

[3] An illustration of this principle can be found in *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W. 2d 508 (Tex. 1947). Defendant agreed to repair a water heater in Plaintiff's home. Shortly after the repair, the water heater ignited and burned the house down. Defendant breached the contract by failing to repair the heater with reasonable skill and diligence. However, by burning down Plaintiff's home, Defendant also violated the common-law duty of ordinary care.

documents. Although Plaintiffs argue that their claim for relief is not predicated on any loan agreements, they state that Lone Star failed in its "obligations as his lender to perform basic due diligence *with regard to the SBA loan* that Gomez ultimately received." (Case No. 13-07024; ECF No. 62 at 1-2) (emphasis added). Plaintiffs have admitted that, but for the loan agreement, there would be no injury. Any damages to Plaintiffs stem from the contractual relationship and not from a tort independent of the promises made between the parties.

By entering into a contract with Lone Star, Plaintiffs agreed to have their relationship defined by the terms of that contract. Plaintiffs have now alleged in tort damages based on the operation of the contract. However, Texas law does not allow litigants to transform a breach-of-contract claim into a negligence claim absent a showing of a special relationship between the parties. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App. 1996); *Quintanilla v. K-Bin, Inc.*, 993 F.Supp. 560, 563 (S.D. Tex. 1998). Plaintiffs have presented no evidence showing a special relationship. Accordingly, because Plaintiffs cannot establish the existence of a duty owed to them, their negligence claim must fail as a matter of law.

### II. Plaintiffs Have Failed to Present a Prima Facie Case for Fraud

In Plaintiffs' First Amended Original Petition, they allege that "[t]he above and forgoing acts by Defendant Lone Star National Bank constitute fraud." (Case No. 13-07024; ECF No.1-1 at 7). Under Texas law, the elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex.

2011). Plaintiffs must establish the putative existence of each element of fraud in order to defeat the summary judgment motion.

It is apparent that Plaintiffs' petition makes a claim for common law fraud, or fraudulent misrepresentation. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 671 (Tex. App. 1996) (describing fraudulent misrepresentation as another name for common law fraud). The petition describes "material representations" made by Lone Star which caused Plaintiffs to secure financing and purchase the business. However, in its response to summary judgment, Plaintiffs allege a cause of action for fraud by non-disclosure, in addition to its common law fraud claims. A party cannot rely on an unpleaded claim or defense to avoid summary judgment. *Dorothy P. Kornman GMK P.A.S. Trust v. United States*, 2010 WL 905109 at *3 (N.D. Tex. Mar. 12, 2010); *North Cypress Med. Ctr. Operating Co. v. Blue Cross Blue Shield of Tex.*, 2011 WL 582638 at *2 (S.D. Tex. Feb. 9, 2011) (holding that ordinarily a court need not consider issues not asserted by a party in its pleadings). Accordingly, the Court will not address Plaintiffs fraud by non-disclosure claims.

Plaintiffs have alleged multiple representations made by Lone Star in an attempt to establish a prima facie case for fraud. However, none of the representations are sufficient to support a fraud claim. The Court will address each of the alleged representations in turn.

    a.  Misrepresentation of the SBA loan's purpose

After Gomez applied for a loan from Lone Star on August 19, 2009, Lone Star filed a request with the Small Business Administration for authorization for an SBA 7(a) Guaranteed Loan. (Case No. 13-07024; ECF No. 63-2). The SBA guarantees a percentage of loans to small

businesses and their owners so long as they meet certain eligibility requirements.[4]  *7(a) Loan Program Eligibility*, https://www.sba.gov/content/7a-loan-program-eligibility (last visited Feb. 10, 2015).  In Section G of their SBA request, Lone Star indicated the loan was to be used to "purchase assets from Estrella Ventures Inc." (Case No. 13-07024; ECF No. 63-2 at 5).  Plaintiffs further allege that on Gomez's handwritten SBA application, Lone Star changed the purpose of the loan to "purchase business" from "purchase franchise." (Case No. 13-07024; ECF No. 63-5).  Representing the purpose of a loan as an asset or business purchase instead of a franchise purchase is significant, because according to Plaintiffs, a franchise purchase would trigger the requirements of Section (I)(3)(e) of the SBA Authorization.

Section (I)(3)(e) states in full:

> **Agreement of Franchisor:**
> (1) That Lender and SBA can have access to Franchisor's books and records relating to Borrower's billing, collections and receivables.
> (2) Upon Loan payment default or deferment, to defer payment of franchise fees, royalties, advertising, and other fees until Borrower brings Loan payments current.
> (3) To give Lender 30 days notice of intent to terminate the Franchise Agreement.
> (4) To give Lender the same opportunity to cure any defaults under the franchise or lease agreement that is given Franchisee under the same agreements.

(Case No. 13-07024; ECF No. 63-2 at 9).  Even assuming Lone Star's representations to the SBA were false and the additional SBA requirements should have been in effect, Plaintiffs cannot show that Plaintiffs relied on the representations or that they were material.  Plaintiffs have produced no evidence that Gomez ever saw these alleged misrepresentations.  In fact, by asserting that Lone Star changed Gomez's application after he handed it over to Lone Star,

---

[4] 7(a) refers to Section 7(a) of the Small Business Act, which empowers the SBA to "make loans to any qualified small business concern . . . for the purposes of this chapter. Such financings may be made either directly or in cooperation with banks or other financial institutions. . . ." 15 U.S.C. § 636(a).

Plaintiffs tacitly admit that the changes occurred without Gomez's knowledge. If Gomez did not know the representations occurred, then he could not have relied on the representations.

Nor can it be said the representations were material. Gomez approached Lone Star with the intent of obtaining a loan to buy a franchise.[5] Gomez then obtained the money he requested from Lone Star, but because of the alleged misrepresentations, the requirements of Section (I)(3)(e) did not take effect. However, only one of the four provisions actually relates to the Borrower, i.e., Gomez. Section (I)(3)(e)(2) requires the Franchisor to allow the Borrower to defer payment of franchise fees to allow the Borrower time to cure a default. Had the Franchisor, PPI, actually refused to allow Gomez to delay payment of his franchise fees, then perhaps Plaintiffs would have an argument for materiality. But Plaintiffs have produced no evidence that this occurred. In fact, in the Amended Petition Plaintiffs state that "Plaintiffs paid the franchise fees as required under the franchise agreement. . . ." If Plaintiffs paid the franchise fees without difficulty, then being denied the protections of Section (I)(3)(e)(2) was immaterial.

Plaintiffs may presented a potential claim on behalf of the SBA. However, the SBA is not a plaintiff in this suit. Because Plaintiffs have presented no evidence that they relied on the misrepresentation of the loan's purpose, or that the misrepresentations was material, these facts cannot sustain a fraud claim.

    b.  Misrepresentation of equipment value

Plaintiffs' next attempt to find some evidence in support of their fraud claims involves the valuation of the Rio Grande Pizza Patron's equipment. The Purchase-Sale Agreement between Gomez and Saenz (as representative for Estrella Ventures) contains an itemized list of the restaurant's inventory and equipment with a dollar value for each item. (Case No. 13-07024;

---

[5] At his deposition, Gomez testified that he told a Lone Star employee that he "wanted to buy a franchise." (ECF No. 64-7 at 7).

ECF No. 63-3 at 5). At his deposition, Saenz testified that he originally provided the equipment list to Lone Star with no valuation, at which point Lone Star requested that he remake the list and include the price he paid for each item. (Case No. 13-07024; ECF No. 64-7 at 5). Plaintiffs have interpreted this exchange as an attempt by Lone Star to artificially inflate the value of the restaurant's collateral in order to support a loan value of $287,000.00.

This argument is without merit. Gomez himself has testified that the purchase price was "set in stone" long before he approached Lone Star to obtain financing. (Case No. 13-07024; ECF No. 60 at 46). Lone Star gave Gomez a $287,200 loan *because Gomez asked them for $287,200*. Gomez signed a Credit Application Form from Lone Star on August 19, 2009 requesting a $287,200.00 loan. (Case No. 13-07024; ECF No. 54-7). The evidentiary record indicates that Gomez saw the equipment and inventory valuation on October 15, 2009 when he signed the Purchase-Sale Agreement, well after he had already asked Lone Star for the loan.[6] (Case No. 13-07024; ECF No. 63-3). Even if the equipment valuation was false, Gomez could not have relied on that valuation because he had already applied for a loan in the exact amount that he actually received.

This is not to say that Plaintiffs have presented evidence of falsity. Nowhere on the Purchase-Sale Agreement does it indicate that the valuation was made according to the fair market value of the equipment. Lone Star never claimed that the numbers reflected the equipment's fair market value. Gomez testified that at the October 15 meeting, Saenz told him that the numbers were the depreciated prices of the equipment, not the purchase prices. (Case No. 13-07024; ECF No. 64-3 at 13). But Saenz was not an agent or employee Lone Star. At his deposition, Saenz testified that Lone Star instructed him to provide the purchase price, but he

---

[6] When asked whether he had seen any version of the Purchase Sale Agreement before October 15, 2009, Gomez responded "No, this is the only thing that I saw." (ECF No. 64-3 at 11).

notably did not testify that Lone Star instructed him to then misrepresent the purchase price as fair market value.[7] Saenz's potentially fraudulent conduct cannot be imputed to Lone Star. Saenz may have made a false representation, but from Lone Star's perspective they asked Saenz to provide an accurate representation of what he paid for the equipment.

    c. Misrepresenting that Lone Star performed the requisite due diligence

Finally, Plaintiffs allege that Lone Star falsely claimed they had performed the due diligence as required by the SBA. Lone Star allegedly failed to verify the financial information provided by Saenz contrary to the terms of its SBA Guaranty Application.[8] Plaintiffs also allege that Lone Star failed to ascertain the market value and liquidation value of the loan's collateral, contrary to the terms of the SBA Application. As discussed above, Lone Star did not provide the market value or liquidation value of the collateral, and instead relied on the collateral's purchase price. Lone Star's alleged failure to comply with the terms of the SBA does not constitute fraud against the Plaintiffs. Plaintiffs have not established that a material representation was made, or that Gomez justifiably relied on any representation.

Other than a conclusory statement that Lone Star represented "that it had done due diligence as required by the SBA," Plaintiffs make no attempt to demonstrate when or how Lone Star actually made this representation. Lone Star may have breached the terms of the SBA Application, but "the usual view is that mere breach of contract is not fraud and that it may not

---

[7] At his deposition, Gomez testified that, after reading Saenz's deposition, "I found out that a loan officer [from Lone Star] talked to [Saenz] and told him to change the numbers." (ECF No. 64-3 at 10). This is not an accurate characterization of Saenz's testimony. Lone Star did tell him to provide the purchase price for the equipment, but only after he originally gave no valuation at all.

[8] The SBA Application required Lone Star to review and analyze financial statements for the business going back three years. (ECF No. 64-5).

be evidence of fraud.[9]" *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). It is possible that Lone Star did not perform the requisite due diligence, but unless Lone Star affirmatively represented to Gomez that they would investigate Saenz's financials or the franchise agreement, Plaintiffs have not established the first element of fraud.  Gomez testified that he met with Lone Star employees who told him that the SBA would guarantee 75% of the loan, but notably absent from his testimony is any indication that Lone Star employees told him that they performed due diligence because of the SBA's involvement.  In fact, Gomez admitted at his deposition that no Lone Star employee ever represented that they would ensure the franchise transferred properly.  (Case No. 13-07024; ECF No. 64-3 at 15).

Plaintiffs claim that Gomez relied on Lone Star to verify Saenz's financial information and to ensure that Saenz properly transferred the franchise to Gomez.  The Court questions whether Gomez's reliance was justifiable given the circumstances.  In order to establish reliance, Plaintiffs must demonstrate that they both actually and justifiably relied upon a representation. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  Gomez fully understood that Lone Star was not acting as his legal representative during the negotiations. (Case No. 13-07024; ECF No. 64-3 at 16).  He further admitted that he provided financial information he received from Saenz to Lone Star, and that he did not verify the information because he trusted Saenz at the time.  *Id.*  Even assuming that Lone Star represented to Gomez that the SBA involvement imposed certain due diligence requirements on Lone Star, it would not be reasonable for Gomez to rely solely on Lone Star to perform due diligence.  Plaintiffs claim that had Lone Star acted properly, it never would have made the loan because Saenz's fraud was

---

[9] The Court is not implying that Lone Star breached a contract with the SBA.  The Fifth Circuit has held that a loan authorization from the SBA was not a contract to lend but rather an agreement between the lending institution and the SBA defining under what conditions the SBA would honor its guaranty.  *Rosas v. SBA*, 964 F.2d 351, 358 (5th Cir. 1992).  Lone Star may have been under no obligation to perform according to the terms of the SBA Application or the SBA Authorization (ECF Nos. 64-5 and 63-2).

so "conspicuous" and "obvious" as to be readily apparent. (Case No. 13-07024; ECF No. 62 at 2). It is mystifying then why Gomez himself did not conduct even a cursory investigation, which would have uncovered such an allegedly obvious fraud attempt. Plaintiffs' fraud claim is an attempt to impose an obligation on Lone Star to handhold its customers through every step of the investment process. To the extent that Gomez relied on Lone Star to perform due diligence that he should have performed himself, the reliance was not justifiable.

## Recommendation

The Court recommends that the District Court grant Lone Star's motion for summary judgment. Plaintiffs' claims should be dismissed with prejudice.

SIGNED **March 6, 2015.**

                                               Marvin Isgur
                         UNITED STATES BANKRUPTCY JUDGE